UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTY C.V.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY ICE DETENTION FACILITY, et al.<br><br>Respondents. | No. 1:26-cv-06323-TLN-CKD<br><br>A# 098-294-098<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Christy C.V.'s ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 8.) Petitioner filed a reply. (ECF No. 14.) Petitioner also filed motions for temporary restraining order, which are fully briefed. (ECF Nos. 2, 15, 17.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner from custody.

///

///

1 The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on September 13, 2013. (ECF No. 1 at 9.) After presenting herself to immigration authorities at the border and expressing fear of returning to her country of citizenship, Petitioner was placed in expedited removal proceedings and remained in custody at a detention facility in Arizona pending an asylum interview. (ECF No. 8 at 13; ECF No. 14-1 at 2.) While detained in Arizona, Petitioner was sexually assaulted. (ECF No. 14-1 at 2.) Petitioner was later transferred to California, issued a Notice to Appear, and released on bond with conditions of supervision. (*Id.*; ECF No. 1 at 12; ECF No. 8 at 13, 15.)

In the time that followed, Petitioner lived in California. (ECF No. 1 at 2.) She applied for asylum and attended all check-ins with U.S. Immigration and Customs Enforcement ("ICE") and hearings for her immigration proceedings. (*Id.* at 13–15.) Petitioner adopted her son from a family member as an infant, and he is now thirteen years old. (ECF No. 14-1 at 1.) She got married and was "living [her] American dream." (ECF No. 1 at 11.) Petitioner held several jobs including working on farms picking vegetables and feeding cows, managing a gas station, and working as a flooring specialist at Home Depot. (ECF No. 14-1 at 2.) Most recently, she was a case manager for a social services organization. (*Id.*; ECF No. 14-2 at 1–2.) Petitioner's supervisor submits a declaration attesting to her good character and confirming the organization is holding Petitioner's job open for her. (ECF No. 14-2 at 2.) Petitioner's supervisor states, "we implore you to allow her to return to us and continue to make the contributions she makes." (*Id.*)

In 2024, Petitioner was arrested for grand theft and obtaining money by false pretenses. (ECF No. 8 at 21.) She was ultimately convicted of grand theft and sentenced to 265 days in jail and 24 months of probation. (*Id.* at 21–22.) Petitioner submits that the conviction stemmed from misunderstandings and mistakes while working at the gas station and Home Depot. (ECF No. 14-1 at 3.)

On or about June 17, 2026, Petitioner was arrested by ICE in a targeted operation outside her house. (ECF No. 1 at 21; ECF No. 8 at 12.) She was detained without prior notice. (ECF No. 1 at 21.) The government's documents state that ICE issued Petitioner a Form I-200 warrant, but no copy has been filed on the record. (ECF No. 8 at 11.) Petitioner has not been provided

with any custody hearing since being detained. (*Id.* at 2.)

Petitioner is a transgender woman with complete female anatomy. (ECF No. 14-1 at 1.) In 2023, an immigration judge granted Petitioner's request to amend her name in immigration proceedings from her birth name to her chosen name. (ECF No. 8 at 26.) The government's records identify Petitioner's sex as female. (*Id.* at 10.) However, Petitioner is currently housed at the California City Detention Facility in the general population with all men. (ECF No. 14-1 at 3.) She shares a cell with a man. (*Id.* at 2.) Petitioner provides details of incidents with other detainees and ICE officers that cause her to feel scared and remind her of her prior assault at the detention facility in Arizona. (*Id.* at 3–4.) For example, Petitioner states that while out on the yard, a man said to her, "you know people like you, we kill people like you because you don't deserve to be in this world." (*Id.* at 3.) A progress note in Petitioner's ICE medical record states she is "[c]learly at risk of being abused if allowed in an open dorm & unprotected setting." (ECF No. 14-4 at 6.)

After reporting the harassment and threats, Petitioner was placed in segregated protective custody where she was on lockdown for 23 to 24 hours per day for eleven days. (ECF No. 14-1 at 3.) This placement is the equivalent to solitary confinement. (ECF No. 15 at 1.) During this time, Petitioner could not make phone calls and was placed in handcuffs to go to the showers or recreation. (ECF No. 14-1 at 3.) This caused her to feel guilty, confused, depressed, and suicidal. (*Id.*) Petitioner was later moved back to the general population. (*Id.*) She was placed back in solitary confinement on September 2, 2026. (ECF No. 15-2 at 2.) For the first two days of solitary confinement, Petitioner did not receive her anxiety medication. (*Id.* at 3.) It is not clear on the record how long this period of solitary confinement lasted or whether it is still ongoing.

Petitioner is immune compromised and requires treatment for throat cancer. (ECF No. 14-1 at 2.) She has not been able to access to cancer therapy while in detention despite several requests for oncology appointments. (ECF No. 1 at 28.) Petitioner details several other physical and mental health conditions that have been exacerbated by her imprisonment. (*Id.* 27–28; ECF No. 14-1 at 2.) Petitioner states, "I am afraid of dying here from worsening physical health, worsening mental health that might drive me to suicidal thoughts again, or from another

detainee's violence toward me." (ECF No. 14-1 at 4.)

On July 1, 2026, Petitioner, through immigration counsel, filed a motion in immigration court seeking an order of removal to facilitate her departure from the United States to her country of citizenship. (ECF No. 8 at 36–38.) The reason stated for the request is that she requires medication not readily available to her in detention. (*Id.* at 37.) Petitioner explains that she made the request out of desperation as she thought "it would be better to be an alive mother from [her country of citizenship] to [her] son rather than a dead mother here." (ECF No. 14-1 at 4.) The request has been pending for several months without resolution. (ECF No. 14-3 at 1.) Petitioner has since directed her immigration attorney to withdraw the request. (*Id.*) Petitioner's next immigration hearing is scheduled for March 21, 2029. (ECF No. 8 at 13.)

Petitioner filed the instant Petition on August 10, 2026. (ECF No. 1 at 1.) Petitioner challenges the lawfulness of her civil detention and seeks immediate release. (*Id.* at 27–34.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims her detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 27–32; ECF No. 14 at 6–12.) In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), and her detention is not unconstitutionally

prolonged or punitive. (ECF No. 8 at 3–6; ECF No. 17 at 2–3.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Substantive due process "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746 (internal quotation marks and citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). A "violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*, 481 U.S. at 747).

Civil immigration detention is "nonpunitive in purpose and effect," and thus requires that a "special justification" outweigh the detainee's "constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). In this context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D.

Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690–91.)

To determine whether Petitioner's detention violates substantive due process, the Court applies the following five-factor balancing test set forth in *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1183–84 (E.D. Cal. 2025) ("*Doe v. Chestnut*"), adopted from *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("*Becerra II*"):[2]

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.

*Doe v. Chestnut*, 810 F. Supp. 3d at 1183–84. The Court begins with the conditions of Petitioner's confinement before turning to the remaining factors.

A. Conditions of Detention

"[W]hen the State takes a person into its custody and holds [them] there against [their] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for [their] safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) (citing *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982)). That duty includes "provid[ing] for [Petitioner's] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety[.]" *Id.* at 200.

"[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). Conditions of confinement are

---

[2] The Court has applied different tests in other due process challenges to civil immigration detention such as that set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See*, *e.g.*, *Daniel P.V. v. Warden, California City Corr. Ctr.*, No. 2:26-CV-01372-TLN-CKD, 2026 WL 1846736, at *4 (E.D. Cal. June 26, 2026). However, the Court agrees with Petitioner that the test provided in *Doe v. Chestnut* is appropriate here based on Petitioner's claim that her detention is unconstitutionally punitive in violation of substantive due process. (ECF No. 14 at 6.)

punitive if they are intended to punish, excessive in relation to their nonpunitive purpose, or employed to achieve objectives that could be accomplished with alternative or less harsh methods. *Id.* at 934–95 (quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). A "presumption of punitive conditions" arises where a civil detainee is confined in conditions "identical to, similar to, or more restrictive than, those in which [their] criminal counterparts are held[.]" *Id.* at 932, 934.

The harsh conditions at the California City Detention Facility ("CCDF"), where Petitioner is currently confined, are well documented. *See Tigranyan v. Warden of California City Det.*, No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (citing investigation by Disability Rights California finding CCDF fails to provide necessary medical and mental health care and fails to meet other basic needs). Some detainees have described incidences of medical neglect and inadequate food, water, and bathroom facilities. *Rivera Ramierz v. Chestnut*, No. 1:26-CV-03639-TLN-SCR, 2026 WL 2323015, at *4 (E.D. Cal. Aug. 11, 2026). Others have described conditions as "abysmal," with "frigid" temperatures and water that tastes like bleach or detergent. *Kaur v. United States Dep't of Homeland Sec.*, 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). In a class action against CCDF, plaintiffs were found likely to succeed on their claim that they were being subjected to punitive conditions pertaining to climatic exposure and outdoor access. *Gomez Ruiz v. U.S. Immigr. & Customs Enf't*, 834 F. Supp. 3d 835, 849–50 (N.D. Cal. 2026). The *Doe v. Chestnut* court found "the conditions at [CCDF] are not only inherently harsh but also worse than the conditions . . . in state prison." 810 F. Supp. 3d at 1201 (quoting *Becerra II*, 732 F. Supp. 3d at 1089).

Petitioner's experience at CCDF is consistent with these accounts and even more severe. Not only is Petitioner subject to the harsh conditions known to exist at CCDF, but her placement in the facility is clearly dangerous given that she is a transgender woman housed in a men's facility who is immune compromised and requires treatment for several health conditions. Petitioner has been harassed and threatened by other detainees and ICE officers. When Petitioner reported these incidents, Respondents placed her in solitary confinement where she was denied

medical treatment and ultimately became a threat to herself.

The Court is deeply concerned for Petitioner's present safety at CCDF. This factor weighs heavily towards finding Petitioner's detention is unconstitutionally punitive.

B. Length of Detention

While "it has . . . never been clearly delineated in the context of immigration detention" when the length of detention results in a violation of a noncitizen's substantive due process rights, it is "undisputed" that such a limit exists. *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("*Becerra I*") (quoting *Torres*, 995 F.3d at 708). However, whether the duration of detention is excessive and therefore punitive "is a relative question" that must be weighed against the regulatory purposes for the detention and conditions of confinement. *Becerra II*, 732 F. Supp. 3d at 1083. "[I]f there are allegations of unconstitutional conditions of confinement, the available avenues of redress do not require a petitioner to wait for detention to become unduly prolonged in order to challenge such conditions." *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. Sep. 29, 2022).

Petitioner has been detained for approximately four months. Courts typically find longer periods of detention to be unconstitutionally prolonged. *See*, *e.g.*, *Amado v. United States Dep't of Just.*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (noting courts have found detention over seven months unreasonable and collecting cases); *Zadyvdas*, 533 U.S. at 701 (finding six months the presumptively reasonable period for detention pursuant to 8 U.S.C. §1231(a)(6)). However, considering the conditions Petitioner has endured over the course of her four months in custody, the Court nevertheless finds the duration of her confinement weighs in favor — or is at least neutral — towards finding her detention unconstitutionally punitive.

C. Government Contribution to Delay

The Court next considers whether the government is responsible for "delays that have contributed to the duration of detention." *Becerra II*, 732 F. Supp. 3d at 1083. The record shows government delay has contributed to the duration of Petitioner's detention. In July, Petitioner sought an order of removal to her country of citizenship so that she could obtain necessary

medical care not available in detention, and that motion remained pending without resolution for several months. Petitioner's next immigration hearing is scheduled to occur in 2029. Petitioner therefore faces at least three more years in immigration detention plus the possibility of additional time if she is ordered removed and seeks to appeal. There is no indication Petitioner has contributed to the duration of her detention. This factor thus weighs in favor of finding Petitioner's detention unconstitutionally punitive.

D. Evidence of Flight Risk and Danger

Next, "[w]hether the length of [Petitioner's] detention has become impermissibly punitive depends in part on whether it has become excessive in relation to its regulatory purpose." *Becerra II*, 732 F. Supp. 3d at 1083 (citing *Salerno*, 481 U.S. at 748). As the government's regulatory purposes for civil immigration detention are "limiting flight risk and preventing danger to the community," determining whether Petitioner's detention has become punitive requires considering the extent to which it serves those purposes. *Id.*

Respondents argue this factor weighs against Petitioner because her decision to rescind her motion for an order of removal "indicates Petitioner's propensity to change [her] mind against compliance poses as a flight risk," and her criminal history establishes a danger to the community. The Court disagrees. First, Petitioner has explained the reason she made the motion was out of a fear of dying in immigration custody for lack of necessary medical care. That she no longer wishes to pursue the request to be removed says nothing about her willingness to appear at future hearings related to her immigration proceedings. Petitioner has demonstrated ties to her community including her husband, son, and mother with whom she intends to live with upon release and the job her supervisor is holding open for her. (ECF No. 14 at 9.) These ties indicate her detention is not necessary to prevent flight risk.

Second, while Petitioner's criminal conviction for grand theft occurred relatively recently in 2024, Petitioner paid her debt to society by serving a lengthy sentence and was released on probation. The Court declines to assume without evidence that these rehabilitation efforts have failed and Petitioner will reoffend. While the Court does not discount the seriousness of Petitioner's offense, the conviction on its own does not equate to present danger. *See Singh v.*

*Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (noting "not all criminal convictions conclusively establish that a[ ] [noncitizen] presents a danger to the community, even where the crimes are serious enough to render the [noncitizen] removable."). There are no other facts on the record to suggest Petitioner poses a danger to the community, and Petitioner has not received an individualized hearing where a neutral decisionmaker found her detention necessary for either of the government's regulatory purposes. Accordingly, the Court finds this factor to be neutral.

E. Alternatives to Detention

Finally, the Court considers "whether the government's interests in limiting the risks of flight and community danger can be adequately protected through alternatives to detention that are less harsh." *Becerra II*, 732 F. Supp 3d at 1088. "If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of these alternatives) is excessive in relation to those interests and unconstitutionally punitive." *Id.*

To the extent Petitioner presents any risk of flight or danger to the community, those risks can be mitigated with less harsh alternatives to detention. Petitioner suggests alternatives such as ankle monitoring and possibly a limitation on handling money at a job. (ECF No. 15 at 11.) The court in *Becerra II* found evidence related to ICE's Intensive Supervision Appearance Program, which offers several alternatives to detention such as GPS tracking, a smartphone application, and reporting by telephone, "can significantly mitigate flight risk and potentially mitigate any danger to the community." 732 F. Supp. 3d at 1088. Respondents do not address alternatives to detention let alone argue that no alternative is sufficient to protect the government's interests. That alternatives to detention exist thus weighs in favor of finding Petitioner's detention is unconstitutionally punitive.

On balance, the *Doe v. Chestnut* factors weigh towards finding Petitioner's civil immigration detention is not reasonably related to the government's regulatory purposes and has become unconstitutionally punitive. The Court thus finds Petitioner's detention violates the Fifth Amendment Due Process Clause. The remedy for this violation of Petitioner's substantive due process rights is immediate release.

///

## IV. Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Christy C.V. (A# 098-294-098) from custody. Upon Petitioner's release, Respondents may enroll Petitioner in ICE's Intensive Supervision Appearance Program ("ISAP"). At the time of release, Respondents must return all of Petitioner's documents and possessions and provide her a copy of this Order. Respondents must file a **notice certifying compliance** with this provision **by October 13, 2026**.

2. Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226, absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is re-detained, she must be housed in a women's facility.

3. Petitioner's motions for temporary restraining order (ECF Nos. 2, 15) are DENIED as moot. Respondents' motion to dismiss (ECF No. 8) is DENIED.

4. The Clerk of Court is directed to serve **California City Detention Facility** with a copy of this Order.

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: October 8, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE